IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Lori Gilker, individually and on behalf of all others similarly situated, | 3:21-cv-00488 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Chobani, LLC, | Jury Trial Demanded |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Chobani, LLC ("defendant") manufactures, labels and sells low-fat Greek yogurt under the Chobani Complete brand in flavors including vanilla and strawberry ("Product").



2.  The front label statements include nutrition and nutrient claims, ingredient claims and allergen claims (collectively, the "claims").

3.  The nutrition claims include "Chobani Complete" and "Advanced Nutrition Yogurt."

4.  The nutrient claims[1] include:

    - 0g Added Sugar*
      *Not a low calorie food
    - 3g Soluble Fiber
    - 17g Complete Protein
    - 20 Amino Acids
    - + Prebiotic [and] Probiotic

5.  The ingredient claims include:

    - Only Natural Ingredients
    - pictures of the characterizing flavor ingredient, i.e., vanilla beans and flowers or strawberries
    - + Only Real Vanilla (or Other Fruit)
    - Vanilla (or other characterizing flavor ingredient)

6.  The "allergen" claims include "Lactose-Free" and "Easy to Digest."

7.  The back of the package lists the ingredients.

**Ingredients:** Cultured lowfat milk, water, chicory root fiber, less than 1.5% of: vanilla extract, lactase*, natural flavors, monk fruit extract, stevia leaf extract (reb m), fruit pectin, locust bean gum, lemon juice concentrate.

**6 live and active cultures:**

S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus, L. Casei, and L. Rhamnosus.

*Ingredient not found in regular yogurt.

---

[1] The term "nutrient claims" is not used synonymously with "nutrient content claims." Nutrient claims refers to statements

8. The back panel contains the Nutrition Facts.



I. Claims are Misleading

9. The claims are false, deceptive, and misleading for several reasons.

A. Nutrition Claims

10. The Product's name, "Complete Nutrition," is false, deceptive, and misleading because it fails to provide "complete" nutrition as this term is understood by reasonable consumers.

11. Reasonable consumers understand "complete" the same way as defined by the dictionary – "having all the necessary or appropriate parts."

12. The Product does not have all the necessary and appropriate parts related to an average consumer's nutritional needs.

13. The "Advanced Nutrition [Yogurt]" representation is false, deceptive, and misleading because the ingredients and composition are not beyond what others have already introduced into the marketplace.

3

B. <u>Nutrient Content Claims</u>

14. Illinois incorporates the federal food labeling regulations in the Illinois Food, Drug and Cosmetic Act ("IFDCA") and its parallel regulations. See 410 ILCS 620/1, et seq.

15. Congress required that the FDA develop and implement nutrient content claims to prevent consumers from being misled by the endless terms and descriptors appearing on foods.

16. Nutrient content claims tell consumers about the level of relevant nutrients in a food.

17. The criteria for nutrient content claims were the result of dozens of meetings held by the FDA with consumers.

18. "Expressed" nutrient content claims are direct statements about the level (or range) of nutrients in a food, e.g., "low sodium" or "contains 100 calories." 21 C.F.R. § 101.13(b)(1).

19. "Implied" nutrient content claims can describe the food or an ingredient in a manner that suggests that a nutrient is absent or present in a certain amount. 21 C.F.R. § 101.13(b)(2).

20. For example, a claim that a food is "high in oat bran" is understood as a way of saying that food is high in fiber. 21 C.F.R. § 101.13(b)(2)(i).

21. Implied nutrient content claims can also suggest that a food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient e.g., "healthy, contains 3 grams (g) of fat." 21 C.F.R. § 101.13(b)(2)(ii).

22. Nutrient content claims are restricted to nutrients that have an established Reference Daily Intake ("RDI") or Daily Reference Value ("DRV").

23. If this were not the case, companies would be able to promote nutrients and ingredients which were of limited or no value, and consumers would not be able to know if those statements were truthful and meaningful.

24. Probiotics and prebiotics are not recognized by FDA as having an RDI or DRV.

25. Probiotics are defined by the Food and Agriculture Organization and the World Health Organization as "live microorganisms which when administered in adequate amounts confer a health benefit on the host."

26. The theory is that probiotics – "good bacteria" can affect the "gut microbiome," which plays an important role in gastrointestinal health and disease.

27. Consumer enthusiasm for probiotics is based on the unregulated messages conveyed by companies which sell these products, which is a multibillion-dollar industry.

28. Most studies on probiotic strains – including those identified as in the Product – S. Thermophilus, L. Bulgaricus, L. Acidophilus, Bifidus, L. Casei, and L. Rhamnosus – reveal no benefit to persons who are already healthy.

29. The only people who *may* benefit from probiotics are those who suffer from a small number of intestinal disorders.

30. Experts have warned that healthy people who consume probiotics may suffer harm.

31. According to Dr. Matthew Ciorba, a gastroenterologist at Washington University in St. Louis, "There is no evidence to suggest that people with normal gastrointestinal tracts can benefit from taking probiotics."

32. The theory behind probiotics is based on the live bacteria surviving and propagating in the intestinal tract and altering the internal composition of the human body.

33. However, the human gut contains tens of trillions of bacteria.

34. Defendant's Complete Nutrition yogurt purports to contains "billions."

35. The probiotics in the Product are "still just a drop in a bucket," because "The gut always has orders of magnitude more microbes," states Shira Doron, an infectious disease expert at Tufts Medical Center.

36. Defendant touts the probiotics and prebiotics through the + or plus symbol.[2]



37. Through use of the + (plus) symbol in conjunction with "probiotic" and "prebiotic," defendant tells consumers the Product has "more" of these nutrients or ingredients than other comparable foods. 21 C.F.R. § 101.54(e) (identifying "plus" as a synonym for "more").

38. This is an unlawful nutrient content claim, which is also misleading because there is no recognized or accepted number, amount or colony forming units ("CFU") of probiotics and prebiotics with which those in the Product can be compared.

39. Nutrient content claims for the term "more" and its synonyms are restricted to describing the level of protein, vitamins, minerals, dietary fiber, or potassium. 21 C.F.R. § 101.54(e)(1).

40. Further, the Product offers no comparison to other foods with probiotics and prebiotics, i.e., "More, compared to what?"

41. While the front label uses the + (plus) symbol to claim, "ONLY REAL VANILLA," consumers are smart enough to distinguish the context of the plus symbol.

---

[2] Probiotics and prebiotics will be used interchangeably from this point forward in the pleading.

42. In the context of the purported "ONLY REAL VANILLA," the plus symbol is equivalent to a bullet point or checkmark, ticking off attributes of added value.

43. In the context of scientific-sounding terms – Probiotic and Prebiotic – consumers will associate a "plus" symbol to mean not just that the Product contains probiotics, but that (1) probiotics are recognized by relevant authoritative bodies as nutrients of dietary significance and (2) the Product had more of them than other comparable products.

C. Ingredient Claims are Misleading

44. The FDA has considered the term "natural" to mean that nothing artificial or synthetic has been included in, or has been added to, a food that would not normally be expected.

45. Consumers increasingly are avoiding foods that are synthetic, due to negative health and environmental effects caused by chemicals and additives used.

46. Consumers pay more for products that claim to be made with natural ingredients.

47. The representation that the Product contains "Only Natural Ingredients" is false, deceptive and misleading due to the use of "monk fruit extract."

48. *Siraitia grosvenorii* Swingle ("Monk") fruit extract (SGFE) is a high-intensity, non-nutritive sweetener.

49. Should consumers read "monk fruit extract" on the ingredient list, they will think it is made similarly to "vanilla extract," which only involves ethyl alcohol to remove the flavoring principles.

50. However, the sweetener used by defendant is not a simple extract from the Luo Han Guo or monk fruit.

51. Real monk fruit extract is very sweet, but its aftertaste causes producers to further refine and process it to modify its taste.

52. This is typically done with solvents and additives, such as divinylbenzene copolymer, calcium hydroxide, hydrochloric acid and styrene divinylbenzene ion exchange resin.

53. The solvents and additives used in making the monk fruit extract are not natural, as those terms are understood by consumers.

54. Even if none of these solvents or additives remain in final product, their use in an ingredient identified as "monk fruit extract" is misleading.

55. Consumers expect that a representation that a product is made with "Only Natural Ingredients" does not only mean the ingredients are natural, but that they were obtained in a natural way – without harsh processing and additives.

56. Even if consumers read the ingredients, they will expect monk fruit extract to be made in the same, natural way that vanilla extract is made – only with an alcohol solution.

57. The Product contains other representations about its ingredients that are false, deceptive and misleading.

58. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of the Product, relative to itself and other comparable products.

59. Defendant sold more of the Product and at a higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

60. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

61. Plaintiff paid more for the Product based on the representations than she would have otherwise paid.

62. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $4.99 for 24 OZ (680g), excluding tax, higher than similar products represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

63. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

64. Plaintiff Lori Gilker is a citizen of Illinois.

65. Defendant Chobani, LLC is a Delaware limited liability company with a principal place of business in Norwich, Chenango County, New York and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

66. Diversity exists because plaintiff Lori Gilker and defendant are citizens of different states.

67. Upon information and belief, sales of the Product and any available statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

68. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred here – the purchase of plaintiff and her experiences identified here.

## Parties

69. Plaintiff Lori Gilker is a citizen of Collinsville, Madison County, Illinois.

70. Defendant Chobani, LLC is a Delaware limited liability company with a principal place of business in Norwich, New York, Chenango County and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

9

71. Defendant is one of the largest yogurt producers in the world and controls over fifty percent of the United States yogurt market.

72. Defendant popularized the Greek yogurt category in the United States.

73. Greek yogurt is a thick yogurt with higher protein content than regular yogurt.

74. Defendant is considered an "innovator" when it comes to pushing the boundaries in consumer foods and beverages.

75. Defendant's annual sales are approximately $1.5 billion.

76. Plaintiff purchased the Product on at least one occasion within the statutes of limitations for each cause of action, including in April 2021, at locations including Walmart, 1101 Beltline Rd, Collinsville, IL 62234.

77. Plaintiff bought the Product because she expected the + (plus) symbol in conjunction with "Probiotic" and "Prebiotic" meant that these were nutrients of dietary significance, and that it contained more of them than other comparable foods.

78. Plaintiff bought the Product because she expected "Only Natural Ingredients" meant the ingredients were made through natural processes without non-natural additives and processing aids.

79. Plaintiff did not know that probiotics and prebiotics are ingredients with no established dietarily significant values, and that no credible evidence existed of their efficacy or usefulness to healthy people.

80. Plaintiff did not know how monk fruit extract was made.

81. Plaintiff was unaware of the other misrepresentations on the Product.

82. The Product was worth less than what Plaintiff and consumers paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

83. Plaintiff paid more for the Product than she would have paid otherwise.

84. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations about its components and ingredients are consistent with its representations.

## Class Allegations

85. The class will consist of all purchasers of the Product who reside in Illinois during the applicable statutes of limitations.

86. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

87. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

88. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

89. Plaintiff is an adequate representative because her interests do not conflict with other members.

90. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

91. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

92. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

93. Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>Illinois Consumer Fraud and Deceptive Business Practices Act<br>
("ICFA"), 815 ILCS 505/1, et seq.</u>

<u>(Consumer Protection Statute)</u>

94. Plaintiff incorporates by reference all preceding paragraphs.

95. Plaintiff and class members desired to purchase a product which had valuable nutrients it did not have, contained ingredients that were natural not just in their final version but in their production and conformed to the other representations.

96. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

97. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

98. Plaintiff relied on the representations.

99. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty,<br>
Implied Warranty of Merchantability and<br>
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

100. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it had valuable nutrients it did not have, contained ingredients that were natural not just in their final version but in their production and conformed to the other representations.

101. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

102. This duty is based on Defendant's outsized role in the market for this type of Product.

103. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

104. Defendant received notice and should have been aware of these issues due to complaints by regulators, competitors, and consumers, to its main offices.

105. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because they were not fit to pass in the trade as advertised.

106. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

107. Defendant had a duty to truthfully represent the Product, which it breached.

108. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area – a trusted innovator in dairy products.

109. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

110. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchases of the Product.

111. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

112. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

113. Defendant's fraudulent intent is evinced by its knowledge that probiotics and prebiotics were not authorized to be used in nutrient content claims and because its "Only Natural Ingredients" statement was a "half-truth."

### Unjust Enrichment

114. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated:   May 16, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Bar Roll # 519087
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com

15